IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES POWERS,

    Plaintiff,

v.                                        Civil Action No. 3:11CV763–HEH

HAROLD CLARKE, *et al.*,

    Defendants.

## MEMORANDUM OPINION
(Granting Defendants' Supplemental Motion for Summary Judgment)

James Powers, a former Virginia prisoner proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983.[1] Powers is a member of the Nation of Gods and Earths ("NGE"). The Virginia Department of Corrections ("VDOC") has classified the NGE as "a gang rather than [as] a spiritual group." (Compl. ¶ 12.) In 2011, Powers wrote a letter seeking to have the VDOC recognize the NGE as a religion. (*Id.* ¶ 11.) Powers's request was denied "based on the NGE being classified [as] a gang." (*Id.* ¶ 10.) Powers contends that this classification has placed a "substantial burden on Plaintiff. . . ." (*Id.* ¶ 12.) The VDOC policy of labeling NGE as a gang

---

[1] The statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

precludes Powers from receiving spiritual literature, namely *The Five Percenter Newspaper*. (*Id.* ¶ 14.) Powers names Harold Clarke, the Director of the VDOC, and Layton T. Lester, the Warden of Lunenburg Correctional Center, as defendants. Powers lists the following claims for relief:

Claim 1   The Defendants' policy of labeling the NGE as a gang instead of a religion violates Powers's rights under:
    (a)    The Religious Land Use and Institutionalized Persons Act ("RLUIPA");[2]
    (b)    The Free Exercise Clause of the First Amendment;[3]
    (c)    The Establishment Clause of the First Amendment; and,
    (d)    The Equal Protection Clause of the Fourteenth Amendment.[4]

Claim 2   "The Defendants failure to comply with [VDOC] regulation requiring them to process request for DOC recognition of religion form violated James Powers' rights under . . . :" (*Id.* ¶ 21.)[5]
    (a)    RLUIPA;
    (b)    The Free Exercise Clause of the First Amendment;
    (c)    The Establishment Clause of the First Amendment; and,
    (d)    The Equal Protection Clause of the Fourteenth Amendment.

Claim 3   "The Defendant Harold Clarke by upholding and enforcing a blanket ban on publications and literature relating to the Nation of Gods and Earths violates plaintiff James Powers' rights under . . . :" (*Id.* ¶ 22.)
    (a)    RLUIPA;
    (b)    The Free Exercise Clause of the First Amendment;
    (c)    The Establishment Clause of the First Amendment; and,
    (d)    The Equal Protection Clause of the Fourteenth Amendment.

---

[2] Religious Land Use and Institutionalized Persons Act ("RLUIPA") of 2000, 42 U.S.C. §§ 2000cc *et seq.*

[3] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend. I.

[4] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[5] The Court has corrected the capitalization in the quotations to Powers's submissions.

By Memorandum Opinion and Order entered on September 17, 2014, the Court dismissed all of Powers's claims, except for Claims 1(d), 2(d), and 3(d). *See Powers v. Clarke*, No. 3:11CV763–HEH, 2014 WL 4656244, at *3, *10 (E.D. Va. Sept. 17, 2014). Subsequent to the entry of the above Memorandum Opinion, Powers was released from incarceration (ECF No. 60) and Defendants filed a Supplemental Motion for Summary Judgment with respect to the remaining claims (ECF No. 62). Powers has not responded. For the reasons set forth below, the Supplemental Motion for Summary Judgment (ECF No. 62) will be granted.

## I. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary

judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "'*scintilla* of evidence'" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).

Moreover, not all disputes of fact preclude summary judgment. Instead, "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 248. With respect to materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* As to genuineness, the nonmoving party "must produce . . . evidence that creates a fair doubt; wholly speculative assertions will not suffice." *Bongam v. Action Toyota, Inc.*, 14 F. App'x 275, 280 (4th Cir. 2001) (citation omitted) (internal quotation marks omitted). "A motion for summary judgment may not be defeated by evidence that is 'merely colorable' or 'is not sufficiently probative.'" *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1993) (quoting *Anderson*, 477 U.S. at 249–50). Thus, the nonmoving party cannot "'create a genuine issue of material fact through mere speculation.'" *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.3d 213, 214 (4th Cir. 1985)). Nor will mere "'metaphysical doubt as to the material facts'" create a genuine dispute. *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Accordingly, "[t]he nonmovant can show that a dispute is genuine only if it provides sufficient evidence so that a 'reasonable jury could return a verdict for the nonmoving

party.'" *Wiggins v. DaVita Tidewater LLC*, 451 F. Supp. 2d 789, 796 (E.D. Va. 2006) (quoting *Anderson*, 477 U.S. at 248).

In support of their Supplemental Motion for Summary Judgment, Defendants rely on the affidavits of the following individuals, which were submitted in conjunction with the Motion for Summary Judgment: L.B. Cei, Operations Support Manager for the VDOC ("Cei Aff."); J. Randy Myers, President of Chaplain Service Prison Ministry of Virginia, Inc. ("Myers Aff."); Gary J. Clore, Manager of the VDOC Gang Management Unit with the VDOC ("Clore Aff."); Michael Duke, Gang Specialist in the Gang Management Unit for the VDOC ("Duke Aff."); and Layton T. Lester, Warden of Lunenburg Correctional Center ("Lester Aff.").

Powers has failed to respond to the Supplemental Motion for Summary Judgment. Powers's failure to respond to the Supplemental Motion for Summary Judgment permits the Court to rely solely on the submissions of the Defendants in deciding the Motion for Summary Judgment. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992))); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."). Furthermore, "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." E.D. Va. Loc. Civ. R. 56(B).

In light of the foregoing principles and submissions, the following facts are established for purposes of the Supplemental Motion for Summary Judgment.

## II. Pertinent Undisputed Facts

### A. General Background on the Beliefs of the NGE

James Powers is a member of the Nation of God and Earths, otherwise known as the Five Percenters. (Duke Aff. ¶ 3.) "The Five Percenters are a separatist group that teaches racism. . . . [T]heir organization claims they are a 'cultural way of life.' They believe that the black man is ALLAH (*A*rm, *L*eg, *L*eg, *A*rm, *H*ead)/God and that the white man is the devil." (*Id.* ¶ 4.)[6] Duke explains:

> The Enlightener is the teacher. This person knows the Supreme Mathematics, the Supreme Alphabets, and the Book of Knowledge/120 Degrees and teaches it to the Newborns, the new recruits to the Five Percenters. When the Newborn memorizes the Supreme Mathematics, Supreme Alphabets, and Book of Knowledge/120 Degrees he becomes the Enlightener and in turn recruits others.

(*Id.*)[7] "In addition to teaching the racial superiority of black males, the Five Percenters offer offenders 'brotherhood' and 'protection.'" (*Id.*)

---

[6] Powers' "general averments that NGE is not racist do not alter the Court's decision. Where, as here, the specific materials 'promote [racial] supremacy and encourage[ ] contempt and denigration of other races' and religions, an assertion that the religion or belief system '*generally* . . . does not encourage racist or violent behavior' is irrelevant to whether officials may ban the offensive materials." *Versatile v. Johnson*, No. 3:09CV120, 2011 WL 5119259, at *27 n.21 (E.D. Va. Oct. 27, 2011) (omission in original) (quoting *Wood v. Me. Dep't of Corr.*, 1:06cv156, 2008 WL 2222037, at *2 (D. Me. May 22, 2008)).

[7] The Five Percenters "describe Allah as being the complete 'enlightened' black man, who is in fact a god. They do not worship a higher power. They themselves are the highest power." (Clore Aff. ¶ 10(c).)

6

"The goal of the Five Percenters is to teach a system of 'secret knowledge' that a particular race of people is superior to all others and therefore should rightfully rule over all human beings." (Myers Aff. ¶ 5(a).) "What the Five Percenters refer to as their teachings or lessons are contained in the Supreme Mathematics, the Supreme Alphabets, and the Book of Knowledge/120 Degrees." (Duke Aff. ¶ 5.) "The study of the Supreme Mathematics and Supreme Alphabet is . . . to provide the 'knowledge, wisdom, and understanding' of this racial superiority and to help the black man have 'power' to achieve domination . . . ." (Myers Aff. ¶ 5(a).) "Membership as a Five Percenter is proven to another by their familiarity with these materials. The only way for other Five Percenters to know who is truly a Five Percenter is to recite these teachings of the mathematics, alphabet, and the Book of Knowledge/120 Degrees." (Duke Aff. ¶ 5.) VDOC officials contend familiarity with the mathematics and alphabets allows the Five Percenters "to communicate in a form of code." (*Id.*)[8]

### B. VDOC Concerns Regarding Gangs

"The VDOC has a policy of zero tolerance for any inappropriate or criminal behavior committed by individuals or groups of individuals. This zero tolerance policy

---

[8] "If one is not well versed in the mathematics and alphabets he would not understand the communication" between Five Percenters. (Duke Aff. ¶ 6) "For example, if two Five Percenter offenders were discussing guns, such as a Mac 11, they might refer to it as a Mac Knowledge Knowledge (using the mathematics in code). Another example would be if a Five Percenter was warning another Five Percenter that a Correctional Officer was approaching he may say C Cipher (using the alphabet in code)." (*Id.*)

7

includes gang activities, as defined in [VDOC] policies as well as Virginia Code Section 18.2–46.1 et seq.[9]" (Clore Aff. ¶ 5.)[10] "[G]ang activity presents security problems within the VDOC prisons. Within the facilities, gangs have been known to cause planned disturbances, riots, drug distribution, money laundering through offender trust accounts, work stoppages and violent assaults." (*Id.* ¶ 6.) Accordingly, the VDOC

> offender population is prohibited from joining, recruiting for, associating with, participating in, or acting in concert with any individual or group of individuals who may constitute a gang. Furthermore, the offender population is prohibited from owning, creating, possessing, or passing to others any correspondence, documents, drawings, or symbols of any type that might indicate gang involvement.

(*Id.* ¶ 7.) "If an offender is in possession of gang materials, they are confiscated and the offender is charged with possession of gang related materials. As with other gangs,

---

[9] That statute provides, in pertinent part:

> "Criminal street gang" means any ongoing organization, association, or group of three or more persons, whether formal or informal, (i) which has as one of its primary objectives or activities the commission of one or more criminal activities; (ii) which has an identifiable name or identifying sign or symbol; and (iii) whose members individually or collectively have engaged in the commission of, attempt to commit, conspiracy to commit, or solicitation of two or more predicate criminal acts, at least one of which is an act of violence, provided such acts were not part of a common act or transaction.

Va. Code. Ann. § 18.2–46.1 (West 2014).

[10] VDOC Operating Procedure § 803.2.III provides the following, broader definition of a gang:

> **Gang** – A group of individuals who: (a) possess common characteristics that distinguish them from other offenders or groups of offenders and who, as an entity, pose a threat to the safety and security of staff, the facility, other offenders or the community; (b) have a common distinctive goal, symbolism or philosophy; (c) possess identifiable skills or resources, or engage in unauthorized/illegal activities. Criminal street gangs, hate groups, and cults that meet these conditions are considered gangs.

(Cei Aff. Encl. E § 8.02.III.)

8

visibility is strength: the more visible a gang becomes the stronger it gets." (Duke Aff. ¶ 6.)

Within the VDOC, groups that "have no sincere religious purpose, e.g. gangs and racist groups, will vie for a religious designation in an effort to manipulate their way into greater rights and privileges." (Cei Aff. ¶ 6.) Therefore, the Faith Review Committee and its chairman, L.B. Cei, review offender requests for recognition of their religion. (Meyers Aff. ¶¶ 3–4.) "This procedure is the means by which [the VDOC] can avoid these non-religious organizations or groups from gaining rights of assembly and lawful possession of what would otherwise be prohibited gang materials." (Cei Aff. ¶ 6 (citation omitted).)

### C. The VDOC's Classification of the Five Percenters as a Gang

In the early 1990s, Clore supervised the Five Percenter group meetings at Powhatan Correctional Center. (Clore Aff. ¶ 9.) Clore swears that the group acted as a paramilitary organization. (*Id.*) The group marched, participated in exercise drills similar to military drills, practiced defensive tactics, and altered "their state issued clothing to better identify who was a part of the Five Percenters and to show unity among the group." (*Id.*) "In the early 1990's the Five Percenters were the dominant gang" in the VDOC. (Duke Aff. ¶ 8.)

The Department of Homeland Security has acknowledged that the Five Percenters are a "security threat group." (Clore Aff. ¶ 8.) The VDOC has classified the Five Percenters as a gang and not a religion. (*Id.* ¶ 10; Myers Aff. ¶¶ 4–6.) The VDOC's determination that the NGE is not a religion is based, in part, on "[t]he Five Percenters'

9

periodical publications, which are distributed nationwide [and] insist that they are *not* a religion." (Clore Aff. ¶ 11.) Additionally, the NGE fails to meet any of the four tests for recognition as a religion employed by the VDOC. (Myers Aff. ¶ 6.)

The VDOC made the determination that the Five Percenters constituted a gang, which was

> disruptive to the safe, secure and orderly operation of VDOC facilities.... [Because t]hey have participated in work stoppages and small riots, have threatened staff ([a]n offender at Red Onion State Prison kicked an officer in the chest and the resulting shakedown of his cell revealed documents that stated he wanted to hurt staff.), recruited other offenders for their gang (an offender at Powhatan generated and distributed materials being used to recruit members), and have taken over authorized religious services at prisons....

(Clore Aff. ¶ 10(a).) Additionally, the Five Percenters "stress black supremacy throughout their lessons. They teach the black man is god and the white man is the devil and he is not to be trusted or obeyed." (*Id.* ¶ 10(d).)[11]

"Since the ban on group meetings and teaching materials, the number [of Five Percenters within the VDOC has] dropped tremendously along with the incidents involving Five Percenters." (Duke Aff. ¶ 8.)

Nevertheless, even with the ban on group meetings, some problems with Five Percenters have persisted:

> There was an incident at Sussex II State Prison (Sussex II) where Five Percenters took over the Rastafarian program there. When the group met they would break off into separate groups. There was no organized religious service being conducted. It was documented that the members

---

[11] NGE members "attempt to proselytize or convert, but only among one racial group and only for the purpose of becoming more powerful as a group and dominating others in society." (Myers Aff. ¶ 5(d).)

10

who participated in this group had been classified as Five Percenters and Bloods.

(*Id.* ¶ 9.)[12] "In 2007, a self-proclaimed Five Percenter incited a group demonstration during the Rastafarian Program at Sussex II. In 2009, . . . a self-proclaimed Five Percenter assaulted and stabbed a white offender in the chow hall" at the Keen Mountain Correctional Center. (*Id.* ¶ 10.)

### D. Facts Regarding NGE Literature

Defendants state that because the "[NGE]/Five Percenters has been designated as a gang, any literature of that group is strictly prohibited for possession by offenders." (Cei Aff. ¶ 9.) Defendants qualify that statement and specify that despite labeling the NGE as a gang, "[t]he VDOC has not placed a 'blanket ban' on all publications and literature of the [NGE]/Five Percenters. Publications are reviewed on an individual basis unless specifically listed on the disapproved publications list." (*Id.*) For example, VDOC Operating Procedure § 803.2.V.J, at F prohibits possession by offenders of "[m]aterial that depicts, describes, or promotes gang bylaws, initiations, organizational structure, codes, or other gang-related activity or association." (*Id.* Encl. F § 8.03.2.V.J, at F.) Therefore, VDOC officials have reviewed the NGE literature requested by Powers and denied his requests to possess the material after determining on an individual basis that

---

[12] "There are currently 1175 known Five Percenters and 5,107 Bloods[, the largest gang in the VDOC]. The Five Percenters are currently the third largest gang identified by the VDOC." (Duke Aff. ¶ 8.) The "VDOC has documented attempts by Five Percenters to recruit Bloods and attempts by the Bloods to recruit the Five Percenters." (*Id.*)

11

the literature conflicted with VDOC Operating Procedure 803.2.V.J, at F. (Compl. Ex. E, at 7 (as paginated by the CM/ECF docketing system); ECF No. 57, at 2.)

### E. Powers's Request that the NGE Be Recognized as a Religion

"Only approved religions are allowed to meet in Virginia's prisons." (Cei Aff. ¶ 5.) On July 7, 2011, the VDOC Faith Review Committee ("FRC")[13] reviewed and rejected a request for recognition of the NGE as a religion. (*Id.* Encl. D at 2, 4; *see* Cei Aff. ¶ 8.) The next day, July 8, 2011, Powers submitted a request to have the NGE recognized as a religion. (Compl. ¶ 9 (citation omitted).) On July 13, 2011, Powers was informed that NGE was not recognized as a religion and the VDOC classified the group as a gang. (*Id.* ¶ 10 (citation omitted).)

### III. Analysis

#### A. Powers's Demands for Declaratory and Injunctive Relief

On September 25, 2014, the Court received notice from Powers that he had been released and was no longer incarcerated within the VDOC. (ECF No. 60.) "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v.*

---

[13] "The FRC is a panel of representative VDOC staff and a non-VDOC employee who serves as the Committee's religious advisor. The FRC serves in an advisory and decision-making capacity regarding religious accommodation as it relates to and impacts security and legitimate penological interests of the VDOC." (Cei Aff. ¶ 4.)

12

*Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986)). Accordingly, Powers's release moots his demands for declaratory and injunctive relief and such demands will be dismissed.

### B. Powers's Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary classifications by state actors. *See* U.S. Const. amend. XIV, § 1. To survive summary judgment a prisoner must "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Veney v. Wyche*, 293 F.3d 726, 730–31 (4th Cir. 2002) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Thereafter, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654 (citations omitted). "In a prison context," disparate treatment passes muster so long as "the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" *Veney*, 293 F.3d at 732 (alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).[14]

#### 1. Claim 1(d)

In Claim 1(d), Powers asserts that the Defendants' policy of labeling the NGE as a gang instead of a religion denied him equal protection. First, Powers fails to demonstrate that the NGE is similarly situated to other religions within the VDOC. As explained above, the VDOC's determination that the NGE is not a religion is based, in part, on

---

[14] Powers fails to direct the Court to evidence that demonstrates Defendants treated him differently because of his race. *See Johnson v. California*, 543 U.S. 499, 510 (2005).

13

"[t]he Five Percenters' periodical publications, which are distributed nationwide [and] insist that they are **not** a religion." (Clore Aff. ¶ 11.) Additionally, the NGE fails to meet any of the four tests for recognition of a religion used by the VDOC. (Myers Aff. ¶ 6.) Thus, Powers fails to demonstrate that, for purposes of recognition by VDOC officials, the NGE is similarly situated to other religions within the VDOC.

Furthermore, Defendants demonstrate that the VDOC's classification of the NGE as a gang is rationally related to promoting prison security. The VDOC has submitted persuasive evidence that the NGE has operated as a gang within the VDOC and threatened the orderly and safe operation of the prison system. *See In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 470 (4th Cir. 1999) ("Confronted with multiple reports of an identifiable group whose members not only threatened but had actually committed serious, violent acts in the [state prison] system and elsewhere, [the prison official's] decision to designate the Five Percenters as [a security threat group] was manifestly a rational action."). Therefore, the VDOC's classification of the NGE as a gang fails to violate Powers's rights under the Equal Protection Clause. *See Allah v. Virginia*, No. 2:12CV00033, 2014 WL 1669331, at *9 (W.D. Va. Apr. 28, 2014) ("Given the collective record of violence among inmates claiming affiliation with NGE, VDOC's characterization of NGE as a gang and security threat group is the least restrictive means of furthering its compelling interest in prison security."). Accordingly, Claim 1(d) will be dismissed.

### 2. Claim 2(d)

In Claim 2(d), Powers contends Defendants violated his equal protection rights by their "failure to comply with [the VDOC] regulation requiring them to process [a] request for DOC recognition of religion" that he submitted. (Compl. ¶ 21.) Powers apparently claims that Defendants failed to process his request for recognition of the NGE as a religion in the same manner that it processed requests by other inmates for recognition of their religions. Powers fails to direct the Court to any evidence to support this contention. Moreover, Powers fails to demonstrate the VDOC officials handled his request for recognition of a religion differently than they have handled other requests for recognition of a religion, which are submitted the day after the FRC denies religious recognition to that same group. Accordingly, Claim 2(d) will be dismissed.

### 3. Claim 3(d)

In Claim 3(d), Powers asserts that Defendant Clarke violated Powers's right to equal protection by "enforcing a blanket ban on publications and literature relating to the Nation of Gods and Earths . . . ." (Compl. ¶ 22.) As noted above, the VDOC has not placed a blanket ban on NGE literature. (Cei Aff. ¶ 9.) Rather, VDOC officials review each publication "on an individual basis unless specifically listed on the disapproved publications list." (*Id.*) Nevertheless, because the VDOC has designated the NGE as a gang, much of their literature is prohibited pursuant to VDOC Operating Procedure § 803.2.V.L, at F, which prohibits possession by offenders of "[m]aterial that depicts, describes, or promotes gang bylaws, initiations, organizational structure, codes, or other gang-related activity or association." (*Id.* Encl. F § 8.03.2.V.L, at F.) Additionally, other

15

NGE literature has been prohibited under VDOC Operating Procedure § 803.2.IV.L, at D, which prohibits possession by offenders of materials that promote violence, insurrection, or criminal activity. (Cei Aff. ¶ 9; *see id.* Encl. F § 8.03.2.V.L, at D.)

Powers fails to demonstrate that VDOC officials treat NGE literature differently from other publications. Rather, the record reflects that VDOC officials treat NGE literature the same as any other literature that promotes gang activity—they prohibit it. Furthermore, the VDOC's policy of prohibiting literature that promotes gang activity is rationally related to the legitimate penological goal of promoting institutional security. *See Powers v. Clarke*, No. 3:11CV763–HEH, 2014 WL 4656244, at *10 (E.D. Va. Sept. 17, 2014); *Versatile v. Johnson*, No. 3:09CV120, 2011 WL 5119259, at *27 (E.D.Va. Oct. 27, 2011) ("VDOC has demonstrated a compelling interest in preventing security risks posed by unrestricted access to NGE materials which promote racial and religious animosity, incite violence, or encourage gang activity."). Accordingly, Claim 3(d) will be dismissed.

The Supplemental Motion for Summary Judgment (ECF No. 62) will be granted and the action will be dismissed.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: Dec 8, 2014
Richmond, Virginia